

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00101-CV

**IN THE INTEREST OF R.L. JR.** and B.J.L., Children

From the 285th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-PA-02352
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Beth Watkins, Justice

Sitting:        Patricia O. Alvarez, Justice
                Luz Elena D. Chapa, Justice
                Beth Watkins, Justice

Delivered and Filed: July 19, 2023

AFFIRMED

Appellant A.F. challenges the trial court's January 27, 2023 order modifying conservatorship of her children, R.L. Jr. (born 2016) and B.J.L. (born 2019).[1] We affirm the trial court's order.

### BACKGROUND

A.F. is the mother of six children. R.L. Jr. and B.J.L. are her two youngest children, and their father is A.F.'s former partner, R.L.[2]

In 2019, the Texas Department of Family and Protective Services removed the children from A.F.'s and R.L.'s custody and filed a petition to terminate their parental rights. On August 4,

---

[1] To protect the privacy of the minor children, we use initials to refer to the children and their biological parents. TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).
[2] The trial court heard conflicting testimony about whether A.F. and R.L. were together at the time of trial.

2021, the trial court signed a Final Order in Suit Affecting the Parent-Child Relationship (the original order) that, inter alia, declined to terminate A.F.'s or R.L.'s parental rights. The original order: (1) found that appointing A.F. and R.L. as managing conservators was not in the children's best interest "because the appointment would significantly impair [the children's] physical health or emotional development"; (2) found that appointing "a relative of the [children] or another person as managing conservator" was not in the children's best interest; (3) appointed the Department as managing conservator of the children; and (4) appointed A.F. and R.L. as possessory conservators. The original order provided that A.F. and R.L. would have visitation with R.L. Jr. and B.J.L. either "as mutually agreed upon" between the parents and the Department or in supervised visits twice a month for a total of eight hours.

A.F. appealed the original order. *See In re M.A.*, No. 04-21-00374-CV, 2021 WL 5605283, at *1 (Tex. App.—San Antonio Dec. 1, 2021, no pet.) (mem. op.) (per curiam). However, we dismissed her appeal for want of jurisdiction because she did not timely file a notice of appeal. *See id.*

On March 22, 2022, the Department moved to modify the original order only as to R.L. Jr. and B.J.L. The Department's motion alleged that the circumstances of the children or another party affected by the original order had "materially and substantially changed since the rendition of the" original order. The Department asked the trial court to modify the original order to appoint the children's paternal grandfather, Albert L., and his wife Ana L. as joint managing conservators.

On January 6, 2023 and January 25, 2023, the parties tried the Department's motion to the bench. On January 27, 2023, the trial court signed a written order (the modification order) that removed the Department as R.L. Jr. and B.J.L.'s managing conservator and appointed Albert L. and Ana L. as joint managing conservators. The modification order did not alter A.F.'s or R.L.'s status as possessory conservators or their visitation with the children. The modification order

repeated the original order's finding that appointing A.F. and R.L. as managing conservators was not in the children's best interest "because the appointment would significantly impair [the children's] physical health or emotional development[.]" A.F. timely appealed the modification order.

## ANALYSIS

### *Standard of Review*

A trial court may modify an existing order establishing conservatorship of a child if: (1) modification would be in the child's best interest; and (2) "the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since" the rendition of the existing order. TEX. FAM. CODE ANN. § 156.101(a). "The party seeking modification has the burden to establish these elements by a preponderance of the evidence." *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied).[3]

We review a trial court's modification of a conservatorship order for abuse of discretion. *See, e.g.*, *Smith v. Karanja*, 546 S.W.3d 734, 737 (Tex. App.—Houston [1st Dist.] 2018, no pet.). A trial court does not abuse its discretion unless its ruling is arbitrary, unreasonable, or made without reference to guiding rules or principles, or if the trial court "clearly fails to analyze and determine the law correctly or applies the law incorrectly to the facts." *Id.* at 737–38.

### *Parental Presumption*

A.F. does not contend that the Department failed to establish the elements required to modify an existing conservatorship order. *See* TEX. FAM. CODE § 156.101(a); *Zeifman*, 212 S.W.3d at 589. Instead, A.F. argues in her first issue that the trial court abused its discretion by finding that

---

[3] In her brief, A.F. contends, "For the court to be warranted in giving custody of a child to a person other than the child's natural parent, the evidence must be clear and convincing." While this may be a correct statement of law in an original custody proceeding, A.F. cites no authority holding that the clear and convincing evidence standard applies to the modification of an existing order that did not name either natural parent as managing conservator.

her appointment as sole or joint managing conservator would significantly impair the children's physical health or emotional development.

*Applicable Law*

Section 153.131 of the Texas Family Code provides that "unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child." TEX. FAM. CODE ANN. § 153.131(a). This statutory provision is referred to as the parental presumption. The Texas Supreme Court has held that this statutory parental presumption does not apply in a modification proceeding. *See In re V.L.K.*, 24 S.W.3d 338, 344 (Tex. 2000).

The Texas Supreme Court recently clarified that a constitutional—as opposed to statutory—parental presumption applies in modification proceedings where the original order appointed at least one parent as the child's managing conservator. *In re C.J.C.*, 603 S.W.3d 804, 816–19 (Tex. 2020). It also explicitly held, however, that this clarification did "not alter the burden of proof for modifications of court-ordered custody arrangements in which neither parent is named a managing conservator in the original order." *Id.* at 819; *see also In re H.V.S.*, No. 04-20-00217-CV, 2020 WL 5646472, at *3 n.3 (Tex. App.—San Antonio Sept. 23, 2020, no pet.) (mem. op.).

*Application*

The parental presumption unquestionably applied during the 2021 trial that resulted in the original order. *See, e.g.*, *In re J.A.J.*, 243 S.W.3d 611, 614 (Tex. 2007); *In re J.I.M.*, 517 S.W.3d 277, 284 (Tex. App.—San Antonio 2017, pet. denied). However, the original order: (1) found that the Department overcame the parental presumption in that trial; and (2) did not name either A.F. or R.L. as managing conservator. Because A.F. did not timely challenge the original order, its

merits are not at issue in this appeal of the modification order. *See, e.g.*, *Hemenway v. Hemenway*, No. 14-19-00978-CV, 2021 WL 4472685, at *1 n.1 (Tex. App.—Houston [14th Dist.] Sept. 30, 2021, no pet.) (mem. op.).

Like the original order, the modification order found the Department had overcome the parental presumption. But because the original order did not appoint either parent as managing conservator, the parental presumption did not apply in this modification proceeding. *See In re V.L.K.*, 24 S.W.3d at 344; *In re H.V.S.*, 2020 WL 5646472, at *3. The finding A.F. challenges in her first issue therefore was not necessary to support the modification order. *See* TEX. FAM. CODE § 156.101(a). "While an erroneous finding of fact on an ultimate fact issue is harmful error, an immaterial finding of fact is harmless and not grounds for reversal." *Wood v. Wiggins*, 650 S.W.3d 533, 562 (Tex. App.—Houston [1st Dist.] 2021, pet. denied) (internal quotation marks omitted); *see also Cooke Cnty. Tax Appraisal Dist. v. Teel*, 129 S.W.3d 724, 731 (Tex. App.—Fort Worth 2004, no pet.) (defining "ultimate fact issue" as "one that is essential to the cause of action and has a direct effect on the judgment"). Accordingly, even if we assume the trial court erred by including the challenged finding in the modification order, we cannot say that error probably led to the rendition of an improper judgment. TEX. R. APP. P. 44.1(a)(1); *Wood*, 650 S.W.3d at 562.

We overrule A.F.'s first issue.

### *Voluntary Relinquishment*

In her second issue, A.F. argues the trial court abused its discretion by finding she voluntarily relinquished her children to the Department. During the trial in this case, the trial court orally noted that Chapter 153's parental presumption is rebutted if the court finds the parent voluntarily relinquished the child. *See* TEX. FAM. CODE ANN. § 153.373. However, the modification order did not contain a finding that modification of the original order was warranted because A.F. voluntarily relinquished her children. To the extent that the trial court's oral

pronouncement conflicted with its written order, the written order prevails. *See, e.g.*, *In re J.B.R.*, No. 04-21-00253-CV, 2022 WL 4492096, at *4 (Tex. App.—San Antonio Sept. 28, 2022, no pet.) (mem. op.). Because the modification order did not contain the finding A.F. challenges in her second issue, we overrule that issue.

### *Standard Possession Order*

In her third issue, A.F. argues the trial court abused its discretion by deviating from the standard possession order in the modification order.

### *Applicable Law*

Section 153.313 of the Texas Family Code establishes a standard possession order that presumptively applies when a possessory conservator lives more than 100 miles from a child's residence.[4] TEX. FAM. CODE ANN. § 153.313. "The guidelines established in the standard possession order are intended to guide the courts in ordering the terms and conditions for possession of a child by a parent named as a possessory conservator[.]" TEX. FAM. CODE ANN. § 153.251(a). It is a rebuttable presumption that the standard possession order "provides reasonable minimum possession of a child" for a possessory conservator and "is in the best interest of the child." TEX. FAM. CODE ANN. § 153.252.

In determining whether to enter an order that deviates from the standard possession order, the trial court "shall be guided by the guidelines established by the standard possession order and may consider: (1) the age, developmental status, circumstances, needs, and best interest of the child; (2) the circumstances of the managing conservator and of the parent named as a possessory conservator; and (3) any other relevant factor." TEX. FAM. CODE ANN. § 153.256. "The trial court may also place conditions on a parent's access, such as supervised visitation, if necessary for the

---

[4] The evidence showed that A.F. lives in San Antonio and the children live in Houston.

child's best interest." *In re A.J.I.L.*, No. 14-16-00350-CV, 2016 WL 6110450, at *5 (Tex. App.—Houston [14th Dist.] Oct. 18, 2016, pet. denied) (mem. op.). "We give wide latitude to a trial court's determinations on possession and visitation issues, reversing the court's decision only if it appears that the court abused its discretion in light of the record as a whole." *Id.*

*Application*

The standard possession order would have entitled A.F. to unsupervised possession of the children during: (1) either the first, third, and fifth weekend of every month "or not more than one weekend per month of [A.F.'s] choice"; (2) the children's spring vacations from school; and (3) forty-two consecutive days during the summer. TEX. FAM. CODE § 153.313. Both the original order and the modification order deviated from the standard possession order by granting A.F. supervised visitation with the children twice a month for a total of eight hours or as otherwise agreed between A.F. and the children's managing conservator.

As a threshold matter, we note that a trial court may not enter a judgment that is not supported by the pleadings. TEX. R. CIV. P. 301; *In re A.M.*, No. 07-20-00130-CV, 2020 WL 7651973, at *6 (Tex. App.—Amarillo Dec. 23, 2020, pet. denied) (mem. op.); *see also* TEX. FAM. CODE ANN. § 156.004 ("The Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply to a suit for modification under this chapter."). Neither the Department nor A.F. sought to modify the original order's possession schedule, and as noted above, the modification order did not change A.F.'s possession schedule.[5] Where, as here, the pleadings did not support a modification of the original order's terms of possession, the trial court did not abuse its discretion by failing to make that modification. *See In re A.B.K.*, No. 10-06-00272-CV, 2007 WL 3293724, at *6 (Tex. App.—Waco Nov. 7, 2007, no pet.) (mem. op.).

---

[5] The only substantive difference between the two orders' possession schedules is the identification of the children's managing conservator.

Nevertheless, because "pleading standards may be relaxed on issues concerning the custody of children," we will consider whether the record supports the modification order's deviation from the standard possession order. *See In re J.O.*, No. 04-19-00381-CV, 2019 WL 6719029, at *5 (Tex. App.—San Antonio Dec. 11, 2019, no pet.) (mem. op.). Lee Leday, who monitored visits between A.F. and the children, testified that A.F. had difficulty engaging with the children for an entire visit. He explained the family's visits "originally started off in eight hours, but we [were] having a hard time being able to go eight hours, depending on the participants that are coming, whether [R.L.] was coming or not." He testified the visits went well for the full eight hours when R.L. was present. But when A.F. was alone with the children, Leday noticed that she "would often say [the children] were getting tired or there's nothing to do" and "would shorten the visit up" to only three or four hours, even when Leday saw no indication that the children were tired or bored. Leday also testified that A.F. and Albert L. did not get along with each other and that "both parties talk in front of the children too much." Leday noted, however, that the children enjoyed visiting with their parents.

At the time of the trial in this modification proceeding, the children had been living with Albert L. and his wife for more than two years. Albert L. testified that during that time, he "had nothing but issues with" A.F. and that she had "called CPS seven times on" him. He testified that these issues arose after he refused A.F.'s and R.L.'s request to "tell the Judge that [he] no longer could deal with the boys" in an attempt to have the children returned to A.F. and R.L.

Benito Marquez, a Department caseworker who was formerly assigned to this case, testified that A.F. and R.L. asked Albert L. "to kind of look the other way in terms of what the rules were, what visitation was" and became upset when he refused to do so. Marquez also testified that the children were originally removed from A.F.'s and R.L.'s custody due to domestic violence. He noted that while A.F. and R.L. claimed they were no longer in a relationship, "they would

always do everything together." A.F. herself testified that she and R.L. were together at the time of trial.

A.F.'s counselor, Christina Gracia, testified that she believed "any kind of visitation or anything like that would be problematic" because of the distance between A.F.'s and Albert L.'s homes and because A.F. and Albert L. do not get along. Gracia also testified that she was concerned about the medications A.F. was taking "[i]f she's going to have children in her care" because those medications "have a tendency to kind of knock you out or alter your mental status."

The caseworker assigned to the case at the time of trial, Angie Steinau, testified that she had not seen any "changes in [A.F.'s] lifestyle or behaviors since the case began." She also testified that A.F. had been inconsistent in her visits with the children. Steinau noted, for example, that A.F. missed a visit with the children approximately four months before trial because "she had taken too much medication" and "was unable to drive." Steinau testified that she believed A.F.'s visits with the children should continue to be supervised because "[t]here have been concerns that false allegations have been told to [R.L. Jr.]." She also testified that neither A.F. nor R.L. had demonstrated a willingness to comply with court orders.

A.F.'s psychiatrist, Dr. Robert Jimenez, testified that A.F. was doing well on her current medications and was "[a]bsolutely" able to care for small children. Similarly, several of A.F.'s friends and family members, including her now-adult son M.A., testified that they had seen changes in her behavior and believed she could care for R.L. Jr. and B.J.L. The trial court was not required to credit this testimony over the Department's conflicting evidence. *See, e.g., In re A.N.C.*, No. 04-22-00680-CV, 2023 WL 2297407, at *4 (Tex. App.—San Antonio Mar. 1, 2023, no pet.) (mem. op.). Additionally, while the evidence showed that one of A.F.'s older children had been returned to her custody, Steinau testified that because R.L. Jr. and B.J.L. are younger than that child, "[t]hey're not able to protect themselves, they're not able to care for themselves[.]"

In the modification order, the trial court found it was in R.L. Jr. and B.J.L.'s best interest "to deviate from the standard possession order due to past obstruction, manipulation, and mental manipulation of the children . . . and a disregard of former orders of this Court by" A.F. and R.L. This finding is consistent with Steinau's, Marquez's, and Albert L.'s testimony. Under these circumstances, we cannot say the trial court abused its broad discretion by concluding that a deviation from the standard possession order was in the children's best interest. *See In re A.J.I.L.*, 2016 WL 6110450, at *5; *see also* TEX. FAM. CODE § 153.256.

We overrule A.F.'s third issue.

### CONCLUSION

We affirm the trial court's modification order.

Beth Watkins, Justice